**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ANTONIA RODRIGUEZ,**

        **Plaintiff,**

**-vs-**                                                        **Case No. 6:12-cv-977-Orl-28DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on February 9, 2009, alleging an onset of disability on January 19, 2008, due to adhesive capsulitis left shoulder back pain, and

depression. R. 11-21, 26-44[1], 62-64, 208. Her application was denied initially and upon reconsideration. R. 60-79. Plaintiff requested a hearing, which was held on February 24, 2011, before Administrative Law Judge Robert D. Marcinkowski (hereinafter referred to as "ALJ"). R. 26-44. In a decision dated August 11, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 8-21. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on April 27, 2012. R. 1-3. Plaintiff filed this action for judicial review on June 27, 2012. Doc. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on June 6, 1967, and was 43 years old at the time of the hearing. R. 18, 30. She completed the eighth grade in Mexico (R. 29-30) and had past work as an industrial cleaner and nursery laborer. R. 30-31, 192. The ALJ considered Plaintiff essentially unable to communicate in English, and Plaintiff used a Spanish interpreter at the hearing[2]. R. 28, 39.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of left shoulder problems and pain and numbness near her left ear after surgery on the shoulder. R. 33, 36, 187-88, 191. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a left shoulder disorder, which was a "severe" medically determinable impairment, but was not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with frequent use of her bilateral upper extremity for reaching, only occasionally using the left upper extremity for overhead reaching. R. 14. Based upon Plaintiff's RFC, the ALJ determined that

---

[1]Plaintiff's applications were not included in the record, but references are made to them by the ALJ and the Commissioner. *See* Doc. 19 n.1.

[2]Plaintiff also took the Spanish version of the Beck Depression Inventory. R. 315-16.

-2-

she could not perform past relevant work. R. 18. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a small products assembler, a sorter, and a gluer. R. 19-20, 40-41. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 20.

Plaintiff now asserts three main points of error. First, she argues that the ALJ erred by finding she had the RFC to perform light work contrary to her treating orthopedist's opinion and the state agency physician. Second, Plaintiff contends the ALJ erred in assessing her evaluating the credibility of her testimony. Third, she asserts that the ALJ erred in assessing the impact of side effects of her medication on her ability to work. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    RFC and the treating and state agency physician opinions

Plaintiff claims that the ALJ should not have found her able to perform light work (or even sedentary work) contrary to the opinion of her treating orthopedist, Dr. Torres, whose final opinion was that Plaintiff could not lift "more than 5 pounds." Plaintiff also argues that the ALJ should not have given great weight to the opinion of the non-examining state agency physician who opined that Plaintiff could do light work.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians, treating physicians' opinions are given more weight than non-treating physicians. *McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180, at *2 (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). "[T]he opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.* at *2. "[T]he opinions of State agency medical and psychological

consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant." *Id.* at *7.

The opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). "The opinions of non-examining, reviewing physicians . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Hoffman v. Astrue*, 259 F. App'x 213, 217 (11th Cir. 2007).

The issue raised by Plaintiff is the weight the ALJ should have given to Dr. Torres' September 2008 opinion restricting Plaintiff's ability to lift and reach and to the non-examining physician's opinion. The ALJ stated that he gave little weight to Dr. Torres' opinion that Plaintiff should be on a "no work" status (as of March 2008) and great weight to the opinion of Dr. Patel, the non-examining physician, who opined Plaintiff could lift 20 pound occasionally and 10 pound frequently. R. 18. Because the ALJ miscited and mischaracterized Dr. Torres' opinion and failed to appropriately discuss his most relevant and timely opinion his decision was not based on substantial evidence.

Plaintiff was initially injured at work in September 2005 when hanging some plants and one of them fell. R. 285. She was trying to lift it up and felt a sudden strain and pain in the left shoulder,

-6-

and she continued to feel it the next day. R. 285. The medical records indicate she was seen at Centra Care between September 28, 2005 and October 3, 2005 where she was treated for a shoulder sprain with medications, and received physical therapy for approximately six weeks. R. 285.  An MRI in November 2005 showed a partial undersurface tear of the rotator cuff, with no evidence of complete tear; she was then treated by Dr. Aujla, an orthopaedic surgeon in the Sanford area, for approximately eleven months from November 2005 to October 2006. R. 285.  On the first visit, she had an injection and did better, and was placed at maximum medical improvement on December 8, 2005 with regular duty and no impairment rating, but returned again with pain, and had two other injections; the last injection was sometime in November, but it did not help. R. 285.  Plaintiff had also been seen in a local clinic; and although records were not provided, x-rays from December 1, 2006 were normal and Plaintiff continued to work doing floral plant arrangements. R. 285.

On February 6, 2007, Plaintiff was evaluated in connection with her workers compensation claim by Dr. Torres at West Orange Orthopaedics and Sports Medicine. R. 284.  Dr. Torres' impression was that her current symptoms related to her recurrence of her shoulder impingement, and related to her original work-related injury; thus, he opined that she was no longer at maximum medical improvement. R. 284-85.  Dr. Torres assigned Plaintiff to "light duty" with no lifting over 20 pounds, no repetitive lifting and limited over-the-shoulder work. R. 283.

On March 6, 2007, an MRI arthrogram of the left shoulder revealed tendinosis of the distal aspect of the supraspinatus tendon and downsloping of the acromion; Plaintiff was assessed with chronic left shoulder impingement and supraspinatus tendonosis. R. 282.  Her medications were continued, and Plaintiff was scheduled for surgery. R. 282.  Dr. Torres planned for Plaintiff to be in a non working status for three to four weeks with a subsequent light duty status for an additional four weeks. He anticipated, "The patient, barring unforeseen complications, could reach the point of actual physical maximum medical improvement within 3 months." R. 280.

On May 15, 2007, Dr. Torres noted Plaintiff's complaints of ongoing left shoulder pain and wanted to proceed with surgical intervention and found limited range of motion due to pain and apprehension, tenderness in the acromion, and positive cross-over test. R. 279. On May 21, 2007, Dr. Torres noted Plaintiff had had communication problems at the time she was being treated by Dr. Aujla, and she disagreed with his opinion of no symptoms; Dr. Torres noted his prior opinion was incorrect and that Plaintiff in fact did have symptoms for the six month period when she was not under medical care, from December 2005 to May 2006. R. 278. On May 29, 2007, Dr. Torres noted Plaintiff's "vehement indications" that she was never completely asymptomatic, she never had complete resolution of symptoms, and she continues to have the same problem after Dr. Aujla told her that she would get better. R. 276. He noted Plaintiff had pain with range of motion of her shoulder; and diagnosed "Chronic left shoulder impingement, supraspinatus tendonitis." R. 276. On November 13, 2007, Dr. Torres noted Plaintiff's continued pain with forward flexion and internal rotation, crepitus, and tenderness in the acromion; he continued the diagnosis of "chronic left shoulder impingement, supraspinatus tendonitis." R. 275. On January 24, 2008, Dr. Torres found "clear cut" adhesive capsulitis[3] in the left shoulder and performed arthroscopic decompression in the shoulder. R. 254, 274. On February 2, 2008, Dr. Torres noted Plaintiff's complaints of numbness in the left ear and the left side of her face. R. 273.

By February 29, 2008, Plaintiff was still having some pain and discomfort, and complaining of a sensation of numbness over the lateral aspect of her face; she had limited range of motion in the shoulder, and Dr. Torres kept her no-work status. R. 271-72. Plaintiff continued to do fairly poorly at the appointments with Dr. Torres in March to May of 2008; she had increasing pain and continued to show marked guarding and limitation of motion, and tightness along the trapezius. R. 69-271. Dr.

---

[3] Adhesive Capsulitis is "Fibrosis surrounding a joint that severely limits movement. It can result from arthritis, inflammation, or trauma." Taber's Cyclopedic Medical Dictionary, 21st Edition, 2009, at http://www.tabers.com/tabersonline/ub/view/Tabers/143151/28/adhesive_capsulitis.

Torres kept her at no-work status due to her ongoing pain. R. 271. At the April appointment, he noted that he "basically can't even move her arm because of apprehension and pain. She continues to complain of this unusual pain in the arm." R. 270. He recommended that she see a neurologist. R. 270. At the May 2008 appointment, he could not get a "good examination secondary to pain and apprehension." R. 269. Plaintiff remained on a no-work status. R. 269.

In June 2008, Dr. Torres noted her continued complaints of pain and she had "primarily self-limited active range of motion, secondary to pain" R. 265. At that time, he limited her to lifting no more than five pounds and no over the shoulder reaching. R. 265. On July 3, 2008, Dr. Torres performed arthroscopic decompression and manipulation under anesthesia in Plaintiff's left shoulder. R. 244, 268. He noted on July 22, 2008, that Plaintiff had been at a no-work status since her initial surgery and she remained at a no-work status since her initial surgery on January 24, 2008; she remained totally temporarily disabled, given her recent manipulation under anaesthesia and ongoing pain and "frankly her poor outcome thus far." R. 267. He anticipated she would require a period of physical therapy of six to eight weeks. R. 267. On July 22, 2008, Dr. Torres noted "slight improvement" from therapy, and he had a long discussion with her about "continuing to work on therapy and be compliant." R. 266.

On September 16, 2008, Dr. Torres noted Plaintiff was still having pain and discomfort, and some limitation of motion, but he released her for "light duty work with no lifting over ten pounds and no over the shoulder lifting." R. 263. On the same day, Dr. Torres had a telephone conversation with Plaintiff's workers compensation attorney and his dictated notes indicate he gave the attorney a lower lifting maximum as Plaintiff's work limitation. R. 263. Dr. Torres told the attorney that he "anticipated an impairment rating of 3-4%, based primarily on the organic pain syndrome, and on any objective documented loss of motion, but opined she was able to work on a light duty basis, with no lifting more than *five* pounds and no over-the-shoulder lifting." R. 264 (emphasis added).

In October 2008, Dr. Torres continued to note pain, discomfort and limited range of motion in Plaintiff's shoulder with swelling, tenderness, and improved external rotation, but noted there was not much he could do to improve her condition except palliative care; he did not change her work restrictions. R. 262.  Six months later, in March 2009, Dr. Torres found mild pain with forward flexion and internal rotation, minimal swelling, and tenderness along the trapezius and acromion. R. 261. Again, Dr. Torres did not change (or clarify further) Plaintiff's work restrictions.  The non-examining state agency physician, Dr. Patel, reviewed Plaintiff's records and in November 2009 opined that Plaintiff could do light work with limited reaching in all directions, limited fingering, and limited handling[4]. R. 304-06.

Although the ALJ mentions Dr. Torres' August 2008 and March 2009 notes in the long summary of Plaintiff's treatment records (R.16), the ALJ omits any discussion of Dr. Torres' treatment notes from September or October 2008 in the summary or in the discussion of Plaintiff's statements regarding the severity of her symptoms.  *See* R. 17.  In the summary section, the ALJ stated: "Physical examination in August 2008, showed no significant swelling. . . . The claimant was released to *work light duty* and physical therapy was stopped. The record reflects *no further treatment*[5] for this alleged impairment." R. 17.  In actuality, Plaintiff had received treatment from Dr. Torres, including appointments in September and October 2008, but the ALJ failed to note or comment on those visits –even though at the September 2008 visit Dr. Torres defined Plaintiff's final lifting capacity restriction as no more than ten pounds.  At the appointment in August 2008, Dr. Torres limited Plaintiff to "light duty," with no lifting more than five pounds and no over-the-shoulder or repetitive lifting. R. 265.

---

[4]A non-physician (Pamela G. Smith) reviewed Plaintiff's records in April 2009 and opined that Plaintiff could do light work with limited reaching in all directions. R. 294-96.  However, it does not appear that the ALJ gave this opinion any weight since he only cited Dr. Patel's. R. 18.

[5]The ALJ also noted in the next paragraph that Plaintiff testified that she had "had no further treatment since March 4, 2009, due to not having medical insurance. She has not seen any other doctor or visited the emergency room." R. 17.  He omits any discussion of Dr. Torres' notes from September or October 2008 and the specific lifting restriction.

-10-

In September 2008, Dr. Torres kept Plaintiff at "light duty work" but increased her to "no lifting over ten pounds[6]." R. 263. At the October 2008 visit, Dr. Torres placed Plaintiff at maximum medical improvement but did not modify her lifting restriction.

The ALJ cites Dr. Torres as releasing Plaintiff for "light duty" – however, the ALJ applies the lifting restriction of light duty as defined by the SSA regulations rather than the ten-pound limit that Dr. Torres assigned. Under the SSA regulations, light work requires lifting ten pounds for two thirds of an eight hour workday, and *twenty pounds for up to one-third of an eight-hour workday*. Social Security Ruling 83-10. Because the ALJ omitted Dr. Torres' actual lifting restriction of ten pounds from September 2008, and erroneously assigned the SSA's definition of "light work" with a twenty-pound limit, the ALJ's decision was not based on substantial evidence.

The Commissioner argues, based on the same notes from Dr. Torres, that the ALJ was entitled to apply a lifting restriction of *20 pounds*. Although Dr. Torres mentioned to Plaintiff's attorney some "*anticipated* permanent restrictions" with a lifting limit of 20 pounds (R. 264), Dr. Torres never actually raised Plaintiff's lifting restriction above ten pounds at the appointment in October 2008 or her final appointment with him in March 2009, and he noted instead that she continued "to have pain and discomfort in her shoulder with limited motion." R. 262 ("Unfortunately, I don't believe that at this point there is much else I can do to salvage or change her condition."); R. 261 ("She is still having shoulder pain and limitation. . . Unfortunately, there is not much else we can do beyond palliative care.").

Moreover, the ALJ's decision was internally inconsistent. The ALJ gave Dr. Torres' opinion little weight because the ALJ erroneously found that Dr. Torres had Plaintiff on a "no-work" status

---

[6]There was an apparent inconsistency in Dr. Torres' September 2008 opinion, in that he told Plaintiff during her appointment on September 16, 2008 that she would be limited to lifting no more than 10 pounds, and yet he reported to Plaintiff's attorney – on the very same day – that she would be limited to lifting no more than five pounds at that time. *Compare* R. 263 *with* R. 264. However, it appears that his discussion with the attorney was based on his notes from Plaintiff's *prior* August 19, 2008 appointment where he limited Plaintiff to no lifting more than five pounds. R. 264. When Plaintiff was examined on September 16, 2008 the lifting restriction was raised to ten pounds. R. 263.

in March 2008 (R. 18[7]) when that decision is "reserved to the Commissioner"; yet the ALJ also noted that Dr. Torres released Plaintiff to "work light duty" in August 2008. R. 17, 18. The ALJ should have noted specifically Dr. Torres' latest lifting restriction from September 2008 – instead of applying the lifting restriction for the SSA's definition of "light duty" – and resolved the inconsistency in the September 2008 records if necessary[8]. Because the ALJ failed to accurately describe Dr. Torres' lifting restriction for Plaintiff, or rely on Dr. Torres' latest lifting restriction from September 2008, the ALJ's decision was not based on substantial evidence.

### B.     Pain, side effects, and credibility.

Plaintiff asserts that the ALJ erred in evaluating her pain and credibility, as well as the impact of the side effects of her medications. She contends that the record demonstrates her credibility and that the ALJ failed to provide the appropriate reasoning to discredit her complaints. The Commissioner contends the ALJ properly evaluated Plaintiff's credibility and followed the Eleventh Circuit's pain standard.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

---

[7]Dr. Torres temporarily put Plaintiff on a no-work status in March 2008 "due to her ongoing pain soon after surgery." R. 18.

[8]The Commissioner argues that new regulations regarding re-contacting treating physicians went into effect on March 26, 2012 and the ALJ was not *required* to contact Dr. Torres, but it was within his discretion. Doc. 19 at 8. It is not necessary to decide the issue of whether the ALJ was required to recontact Dr. Torres given the disposition on the other issues, but the Court notes the dates of the ALJ's decision is August 11, 2011 before the effective date of the new regulations. R. 8.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 14. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). The ALJ determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, and that he was required to assess the credibility of the alleged complaints.

The ALJ determined Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. R. 15. The ALJ stated, in assessing Plaintiff's RFC:

> Despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date during which the claimant has not taken any medications for those symptoms. The claimant testified that she refills for pain medications, but that she does not take them daily, only when the pain is severe.
>
> The claimant has described daily activities, which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations.

R. 17.

Plaintiff argues that the ALJ's stated reasons do not prove anything about the severity of Plaintiff's pain, but only about how the side effects of her medications impact her and confirms her statements that medications do not help much, make her dizzy, and are difficult for her to afford because she does not have medical insurance. R. 34-35, 188, 218. She also testified that she still runs out of them and must take her husband's medications at times. R. 35. Plaintiff contends that the ALJ misrepresented her daily activities in that she reported on SSA forms that she had a limited ability to take care of personal needs, and certain household tasks were painful or she did not do them at all[9]. R. 230.

The Commissioner contends that, as discussed by the ALJ, the objective medical findings and the other evidence does not indicate that Plaintiff's condition was as limiting as she claimed. Doc. 19 at 11. The Commissioner argues that the record does not indicate that her alleged side effects and her condition in general prevented her from performing a range light work, as found by the ALJ. Doc. 19 at 11 (citing R. 14). However, the Commissioner again cites to the August 2008 treatment notes, and the erroneous interpretation of Dr. Torres' notation that Plaintiff could perform "light duty" as filling the SSA's definition, rather than the limitations that he instituted in September 2008, which were at a maximum ten pounds, and potentially five pounds. As such the ALJ's credibility opinion, and treatment of Plaintiff's allegations of side effects, were also not based on substantial evidence.

In addition, there may be an issue as to Plaintiff's undisputed limited ability to communicate in English. If Plaintiff is only capable of sedentary work, the ALJ will be expected on remand to also address Plaintiff's literacy in English and whether, along with other relevant factors, it would impact

---

[9]She consistently reported that it hurts to get wet clothing from the washing machine; it hurts to use the mop; it hurts to put the dishes away; her pain is always there, and hurts more when she starts to use her arm. R. 188. She also reported that she cannot use her left shoulder when doing housecleaning; it hurts to do laundry; it affects her when cooking; she cannot reach high or reach for heavy things; her pain is always there, and it hurts more when she tries to move something or lift something; she does no yard work; she has no hobbies; and she does no child care. R. 218-19.

the availability of other jobs available to her in the national economy. *See, e.g.,Zayas v. Heckler*, 577 F. Supp. 121, 127 (S.D. N.Y. 1983) (holding claimant to be disabled and finding that a claimant's literacy in Spanish is irrelevant to his ability to find sedentary work in America, where English is the dominant tongue).

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 22, 2013.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy